Kathryn Vernice DANLEY, Appellant,

v.

Maurice M. DANLEY, Appellee and Cross-Appellant.

No. 53177.

Supreme Court of Iowa.

Dec. 10, 1968.

Roberts & Rittgers, Prairie City, for appellant.

Hammer, Matthias, Tyler & Levin, Newton, for appellee and cross-appellant.

SNELL, Justice.

This appeal involves the property division and alimony awarded plaintiff-wife in a divorce decree.

The trial court granted plaintiff a divorce from defendant on the ground of adultery. The trial court said: "Suffice it to say that the defendant has committed most brazen and culpable breaches of the marital relation and that he has promised to marry his paramour as soon as he can." The right of plaintiff to a divorce is not contested on appeal. The details of defendant's extra-marital activities need not be discussed.

Plaintiff and defendant were married in 1941. They are the parents of three children. The two older children are now married and no longer in the family home. A

son, Kevin, born August 24, 1951, is at home with his mother, plaintiff herein.

Defendant was an only child. His parents owned two farms, one containing 120 acres and one of 194 acres. From the time of their marriage until defendant's father died in 1961 plaintiff and defendant lived on one of the farms. Except during 1952 and 1953 while defendant was in the automobile business in Prairie City they operated the two tracts in conjunction with defendant's parents. The farming operations were not sufficiently successful to provide many conveniences. The farms were encumbered. The house first had electricity in 1943 and water and toilet facilities in 1951. Plaintiff did no field work except to help detassel corn. However, she did farm chores and her work contributed substantially in the farm operation. She has been employed outside the home since April 1962. Her earnings have been used for household and family expenses.

The parties quit farming in 1962. Defendant then went to work in Des Moines selling automobiles. Since September 1963 he has been employed by Vigortone Products, Inc. of Cedar Rapids. He trains and directs salesmen. He is paid a salary and bonus. His taxable wages for 1965 totaled $6,684.03. He also has an expense account for travel. He is now a Division Manager.

I. Defendant's mother died in March 1964. Defendant then became the owner of the farms. The 120 acre farm was sold in 1964 and the 194 acre farm was sold in 1966.

We quote from the trial court's findings of fact:

"No attempt will be made to trace the proceeds arising from these sales. While it is true that sizable liens against the properties involved therein were satisfied from the proceeds of the sales it is also true that some of the money so received was used in maintaining a high standard of living for the defendant and his family and in providing the defendant with funds with which to engage in extensive and expensive extra-marital activities. The bank deposits to which reference is hereinafter made are, at least in large measure, what remains of the proceeds realized from said sales."

At the time of trial plaintiff was employed by Look Magazine in Des Moines. Her take-home pay in 1966 was $2,686.14. She drives to and from work and provides transportation for five persons who pay her therefor at the rate of $5 per week each. Her earnings went into the family account from the time she began working until the parties separated.

The following items of property were involved in the trial court's award:

1. The home property in Prairie City valued at $20,000 and encumbered for $14,-303.21 with interest at 6% per annum and requiring monthly installment payment of $116.65. Title to this property subject to the encumbrances thereon was awarded to plaintiff.

2. The personal property in the home was awarded to plaintiff except for a long list of certain specifically described items awarded to defendant. These items are not in controversy.

3. A 1965 Buick automobile subject to an encumbrance in the sum of $1,281.56 was awarded to plaintiff.

4. Plaintiff was awarded care, custody and control of the minor son, Kevin, subject to the right of visitation by defendant.

5. Defendant was directed to pay $100 per month to the support of the minor son, Kevin, until he attains the age of 21 years, marries or becomes self-supporting, the payments to be made to plaintiff through the office of the clerk of the court.

6. The bank deposits mentioned, supra, representing what was left from the sale of the farms totaled $18,762.39. Of this amount plaintiff was awarded $10,000 "as lump sum permanent alimony." The remainder subject to certain specified costs was awarded to defendant.

7. In addition to the money on deposit awarded to defendant he was awarded all other property including the following items:

(a) Lot 14 in Valley High Manor, an official plat, now a part of the City of Des Moines, subject to encumbrances thereon. The title to this property was held by defendant and Carolyn Deaton, as tenants in common. Defendant had made the down payment thereon.

(b) The 1967 Buick automobile subject to the encumbrance thereon.

(c) A car purchased by defendant for his and plaintiff's son regarded as the son's property.

(d) A 1960 Comet automobile purchased by defendant and given to Miss Deaton and apparently now owned by her.

(e) A diamond ring worth $650 upon which there remained unpaid the sum of $215.32.

(f) Two bank accounts totalling $910.90.

The trial court also determined the primary liability of the parties on their joint and several obligations. Prior allowances of suit money and attorney fees were confirmed and further allowances made. These items are not challenged on appeal.

Plaintiff appealed claiming that the $10,-000 awarded her was in substance a property settlement and that she should be awarded periodic alimony payments of at least $60 per month to be increased to $100 upon the termination of Kevin's child support payments.

We agree that some provision and protection of plaintiff's future should be provided.

Defendant cross-appealed claiming that the $10,000 awarded plaintiff was actually alimony and not a property settlement; that it was more than adequate; more than normally favorable to plaintiff; that no further alimony payments should be re-quired and that defendant should be given an equity of $2,000 in the house in Prairie City at such time as it may be sold in the future. With these propositions we do not agree.

II. In Rider v. Rider, 251 Iowa 1388, 1390, 105 N.W.2d 508, this appears:

" 'As to property division and alimony decision, divorce cases are peculiarly dependent on the facts of each case. Specific rules are not too helpful because the facts vary from case to case. The elements to be considered are parties' age, health, present ability to earn, amount of resources owned by each or both parties, contributions of each to the joint accumulations, the duration of the marriage, indebtedness of each of both, conduct of the guilty party, and any other facts which assist the court to arrive at a just, fair and equitable decision. [Citations] * * * ' "

In the case at bar we have considered these same elements.

At the time of trial plaintiff and defendant were each about 45 years old. They had been married 25 years and had three children. Plaintiff had worked hard and had contributed her full share in meeting family responsibilities.

Plaintiff's present income from employment is less than half the income of defendant.

Plaintiff was awarded the family home with a good equity therein, but the cash awarded her is insufficient to retire the encumbrance thereon. The investment return on the money awarded her would be insufficient to meet the monthly payments on the mortgage.

Defendant complains that plaintiff was derogatory about speeches he prepared for sales meetings and did not have an even disposition when she found out about defendant's paramour. Otherwise, there is not one word in the record adversely reflecting on plaintiff or offering excuse for defendant's conduct.

Defendant seems to think that plaintiff was rather narrow-minded about the situation but we are not inclined to so hold.

■ Neither plaintiff's needs nor defendant's obligations to support are diminished by the obligations defendant may have incurred by his extra-marital activities.

The trial court's analysis of the problem and situation was careful, extensive, and sound and except for one matter considered in a subsequent division is affirmed.

■ The division of property was fair and proper. The order for child custody and support was proper and has not been attacked.

III. Section 598.14, Code of Iowa, provides:

"Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right.

"Subsequent changes may be made by it in these respects when circumstances render them expedient."

■ An award of alimony for support and maintenance may under this statute be modified or changed upon a proper showing of a change in circumstances. Such a change will not permit a change in a property settlement or permit a subsequent award of alimony when none was previously granted.

We recently considered such a problem in Knipfer v. Knipfer, 259 Iowa 347, 144 N.W.2d 140, 144, 145, we quote:

"Except as the rule may be altered by statute, as a general rule, a judgment providing for or approving and adopting an adjustment of property rights as between the parties to a divorce proceeding, or a judgment entered in a divorce proceeding making an award in lieu of dower, like any ordinary judgment, and unlike a judgment for alimony, cannot be modified or vacated after it has become final, in the absence of fraud, coercion, or other grounds on which ordinary judgments may be reviewed, modified, vacated or set aside, even though the court rendering the judgment or decree attempts to retain jurisdiction to do so. 27B C.J.S. Divorce § 300(4).

"In Kraft v. Kraft, 193 Iowa 602, 607, 187 N.W. 449, 451, we said:

" 'Where alimony is allowed in a lump sum as permanent alimony, or there is a division of the real property of the parties, as permanent alimony, the statute does not authorize a change therein, except for such reasons as would justify the setting aside or changing a decree in any other case; that the party awarded permanent alimony is not entitled to permanent alimony and support both.' "

The child support payments to plaintiff will terminate not later than August 24, 1972 and possibly at an earlier date. Until such payments are terminated the money is available to plaintiff for the support of her son and the maintenance of the home. We think provision should be made for the protection of and provisions made for plaintiff's future.

The trial court awarded plaintiff "lump sum permanent alimony."

Black's Law Dictionary defines alimony as the sustenance or support of the wife by her divorced husband and stems from the common-law right of the wife to support by her husband. "Alimony in gross, or in a lump sum, is in the nature of a final property settlement, and hence in some jurisdictions is not included in the term 'alimony,' which in its strict or technical sense contemplates money payments at regular intervals."

In Knipfer v. Knipfer, supra, we discussed alimony and property settlements. We said what is important is whether the settlement is permanent and for a fixed or determinable sum and whether the settlement is in lieu of the wife's rights in property, or in lieu of her dower rights.

■ In the case before us we hold as we did in Knipfer that the award has more of the characteristics of a property settlement than of alimony. As such it should be amended by providing continuing support money for plaintiff.

■ IV. The Decree of Divorce entered by the trial court should be amended by adding thereto a provision for alimony to be paid by defendant for plaintiff's support in the sum of $75 per month beginning upon the termination of child support payments and continuing during her natural life or until she remarries. The case is remanded to the district court for the entry of amendment in accordance herewith.

As so amended the trial court's decree is affirmed on both appeals.

Costs are taxed to defendant.

Amended, remanded and affirmed.

All Justices concur.